Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E
Charleston, WV 25305



FILED

9171 9237 9000 1000 5706 21

2011 DEC 19 PH 2: 36

CATHY S. GATSON, CLERK
KANAWHA CO. CIRCUIT COURT

**Natalie E. Tennant**
Secretary of State
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

| | |
|---|---|
| ControlNumber: | 326330 |
| Defendant: | Greg Chandler's Frame & Body, LLC |
| County: | 20 |
| | 12/15/2011 |
| Civil Action: | 11-C-2231 |

Cathy Gatson, Circuit Clerk
Kanawha County Courthouse
111 Court Street
Charleston WV 25301-2500

I am enclosing:

| | | |
|---|---|---|
| _____ summons | _____ affidavit | __1__ summons and complaint |
| _____ notice | _____ answer | _____ summons and verified complaint |
| _____ order | _____ cross-claim | _____ summons and amended complaint |
| __1__ petition | _____ counterclaim | _____ 3rd party summons and complaint |
| _____ motion | _____ request | _____ notice of materialmans lien |
| _____ suggestions | _____ notice to redeem | _____ notice of mechanic's lien |
| _____ interrogatories | _____ request for production | _____ re-issue summons and complaint |
| _____ discovery | _____ request for admissions | _____ subpoena duces tecum |
| _____ suggestee execution | _____ notice of uim claim | _____ Other |
| _____ subpoena | _____ writ | |
| _____ stipulation | _____ writ of mandamus | |

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have accepted service of process in your name and on your behalf.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of process in your name and on behalf as your attorney-in-fact. Please address any questions about this document directly to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

*Sincerely,*

Natalie E. Tennant
Secretary of State

## SUMMONS

### CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA FILED

STATE OF WEST VIRGINIA, ex rel.
DARRELL V. MCGRAW, JR., Attorney General,

Plaintiff/Petitioner

vs.

LIBERTY MUTUAL INSURANCE COMPANY,
a Massachusetts corporation; and
GREG CHANDLER'S FRAME & BODY SHOP, LLC,
a West Virginia limited liability corporation,

Defendants/Respondents.

2011 DEC 19 PM 2: 36

CATHY S. GATSON, CLERK
KANAWHA CO. CIRCUIT COURT

Civil Action No. 11-C-2231

King



To the above-named Defendant:

GREG CHANDLER'S FRAME & BODY SHOP, LLC
c/o    Greg and Carol Chandler
620 5th Avenue
St. Albans, WV 25177

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned

and required to serve upon Jill L. Miles, Plaintiff's attorney, whose address is Post Office

Box 1789, Charleston, WV 25326-1789, an answer, including any related counterclaim you

may have, to the Complaint and Petition for Preliminary Injunction filed against you in the

above-styled civil action, a true copy of which is herewith delivered to you.  You are

required to serve your answer within ____30____ days after service of this summons upon

you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken

against you for the relief demanded in the complaint and you will be thereafter barred for

asserting in another action any claim you may have which must be asserted by

counterclaim in the above-styled civil action.

Dated  12-15-11

_____
Clerk of Court
By CWoo

**IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA**

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
Attorney General,

           Plaintiff/Petitioner,

                                   CIVIL ACTION NO. $11-C-2231$
                                   JUDGE _____ King

LIBERTY MUTUAL INSURANCE COMPANY.,
a Massachusetts corporation; and,
GREG CHANDLER'S FRAME & BODY, LLC,
a West Virginia limited liability corporation,

           Defendants/Respondents.

## COMPLAINT AND PETITION
## FOR TEMPORARY AND PERMANENT INJUNCTION

This action is brought pursuant to the West Virginia Consumer Credit and Protection

Act, West Virginia Code § 46A-1-101 *et seq.* (hereafter "WVCCPA"). Plaintiff/Petitioner,

the State of West Virginia by Darrell V. McGraw, Jr., Attorney General (hereafter "the

State"), has reason to believe that Defendants/Respondents Liberty Mutual Insurance Co.,

a Massachusetts corporation, (hereinafter "Liberty Mutual") and Greg Chandler's Frame

& Body, LLC, a West Virginia limited liability corporation, (hereinafter "Chandler's") have

violated the WVCCPA. The State brings this action to enjoin and restrain Defendants from

engaging in unfair or deceptive acts or practices in connection with the repair of

automobiles. The State seeks preliminary and permanent injunctive relief and other

1

equitable relief including, but not limited to, investigative costs, consumer restitution, court costs, and attorney's fees.

## THE PARTIES

1.  The Plaintiff, the State of West Virginia, brings this action by and through Darrell V. McGraw, Jr., Attorney General for the State of West Virginia. The Attorney General is authorized to bring this action pursuant to W. Va. Code § § 46A-7-108, -110, and -111 and § 46A-6B-6.

2.  Defendant/Respondent Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business situate at 175 Berkeley Street, Boston, Massachusetts, 02116.

3.  Defendant/Respondent Greg Chandler's Frame & Body, LLC is a limited liability West Virginia corporation with its principal place of business situate at 620 5th Avenue, St. Albans, West Virginia, 25177.

## JURISDICTION AND VENUE

4.  This Court has jurisdiction to hear this matter pursuant to Article VIII, Section 6 of the West Virginia Constitution and W. Va. Code § 51-2-2.

5.  Venue is proper in this Court pursuant to W. Va. Code § § 46A-7-114 and 56-1-1.

## RELEVANT PERIOD OF TIME

6.  The relevant period of time for the events alleged in this complaint begins August 20, 1998 and continues through the present and into the future.

2

## FACTS

7.     Liberty Mutual engages in the sale of auto insurance to West Virginia consumers and is regularly involved in the repair of motor vehicles.

8.     Liberty Mutual negotiates repairs of motor vehicles with motor vehicle body shops for West Virginia consumers it insures.

9.     As such, Liberty's business practices are subject to the provisions set forth in the Automotive Crash Parts Act, W. Va. Code § 46A-6B-1 et seq., and the West Virginia Consumer Credit and Protection Action, W. Va. Code § 46A-1-101 et seq. (WVCCPA).

10.     West Virginia Code § 46A-6B-2(f) defines "motor vehicle body shop" to mean "any person or business establishment that removes, replaces, reconditions or repairs sheet metal or fiberglass motor vehicle crash parts."

11.     Chandler's conducts business in West Virginia as a motor vehicle body shop.

12.     Both "insurance companies" and "motor vehicle body shops" are required to comply with the Automotive Crash Parts Act and the WVCCPA. W. Va. Code § 46A-6B-1.

13.     The Automotive Crash Parts Act prohibits "the use of aftermarket crash parts when negotiating repairs of the motor vehicle with any repairer for a period of three years, the year the motor vehicle was manufactured and the two succeeding years thereafter, unless the motor vehicle owner consents in writing at the time of the repair to the use of the aftermarket crash parts." W. Va. Code § 46A-6B-3.

14.     The Automotive Crash Parts Act mandates that motor vehicle body shops must repair vehicles within three years of manufacture with only "genuine crash parts sufficient to maintain the manufacturer's warranty for fit, finish, structural integrity, corrosion resistance, dent resistance and crash performance unless the motor vehicle owner

3

consents in writing at the time of the repair to the use of aftermarket crash parts." W. Va.

Code § 46A-6B-3.

15.     The Automotive Crash Parts Act requires that

> [W]hen automobile insurance companies negotiate the repair
> of automobiles, and when the motor vehicle body shops repair
> automobiles, they must negotiate and effect the repair of the
> automobiles using new "genuine crash parts" sufficient to
> maintain the automobile manufacturer's new car warranty for
> that part, unless they first obtain the consent of the owner of
> the automobile to be repaired to use "aftermarket crash parts,"
> . . . or "salvage crash parts."

The West Virginia Automotive Dismantlers and Recyclers Association, et al. v. McGraw,

et al., Civil Action No. 97-C-2797 (W. Va. Circ. Ct. Kanawha County Aug. 20, 1998). See

Order, attached hereto and incorporated by reference herein as Exhibit 1.

16.     Liberty Mutual has a contractual agreement with Chandler's whereby

Chandler's is considered to be a Total Liberty Care or "TLC" motor vehicle body shop.

17.     A "TLC" automobile body shop is authorized to do repairs on automobiles for

which claims have been filed with Liberty Mutual and is also authorized to write the

estimates for those repairs.

18.     When negotiating the repairs of motor vehicles with Chandler's for a period

of three years, the year the motor vehicle was manufactured and the two succeeding years

thereafter, Liberty Mutual required that Chandler's write the estimates using salvage crash

parts, without the written consent of the motor vehicle owner at the time of the repair as

required by W. Va. Code § 46A-6B-3.

19.     Liberty Mutual instructed Chandler's that when repairing vehicles in the year

of their manufacture or in the two succeeding years thereafter, the repairs must be made

4

using salvage crash parts, without obtaining the written consent of the motor vehicle owner at the time of the repair as required by W. Va. Code § 46A-6B-3. .

20.    When preparing estimates for vehicles in the year of their manufacture or in the two succeeding years thereafter, Chandler's did not obtain West Virginia consumers' written consent as required by W. Va. Code § 46A-6B-4.

21.    When repairing vehicles in the year of their manufacture or in the two succeeding years thereafter, Chandler's did not obtain West Virginia consumers' written consent required by W. Va. Code § 46A-6B-4 that the repairs be done using salvaged crash parts.

## COUNT I
### (Requiring the Use of Salvaged Crash Parts when Negotiating Repairs Without Obtaining Consumers' Written Consent )

22.    The Plaintiff repeats and alleges the allegations set forth in. paragraphs.. ..... ... .... numbered 1 through 21 and, in addition thereto, alleges the following:

23.    The purpose of West Virginia Code § 46A-6B-1 et seq. is to "require disclosure to motor vehicle owners of information on certain replacement crash parts for repairs to their motor vehicles and to prevent both motor vehicle body shops and insurance companies from requiring the use of aftermarket crash parts for repair unless the motor vehicle owner consents in writing at the time of the repair." W. Va. Code § 46A-6B-1.

24.    West Virginia Code § 46A-6B-2 defines "crash parts" to mean "exterior or interior sheet metal or fiberglass panels and parts that form the superstructure or body of a motor vehicle, including, but not limited to, fenders, bumpers, quarter panels, door

5

panels, hoods, grills, fire walls, permanent roofs, wheel wells and front and rear lamp display panels." W. Va. Code § 46A-6B-2(c).

25. West Virginia Code § 46A-6B-3 provides that "no insurance company may require the use of aftermarket crash parts when negotiating the repairs of motor vehicles with any repairer for a period of three years, the year the motor vehicle was manufactured and the two succeeding years thereafter, unless the motor vehicle owner consents in writing at the time of the repair to the use of aftermarket crash parts."

26. By order entered August 20, 1998, the Circuit Court of Kanawha County, West Virginia, J. King, held that W. Va. Code § 46A-6B-3 included the use of salvage crash parts. See Exhibit 1.

27. Liberty Mutual requires the use of salvaged crash parts when negotiating the repairs of motor vehicles with Chandler's for a period of three years, the year the motor vehicle was manufactured and the two succeeding years thereafter, without the motor vehicle owner's consent in writing at the time of the repair to the use of the salvaged crash parts.

28. Liberty Mutual's conduct violates W. Va. Code § 46A-6B-3 and is an unfair or deceptive act or practice in violation of W. Va. Code § 46A-6-104.

## COUNT II
### (Failure to Obtain Consumers' Written Consent
When Negotiating Repairs Using Salvaged Crash Parts)

29. The Plaintiff repeats and alleges the allegations set forth in paragraphs numbered 1 through 21 and, in addition thereto, alleges the following:

6

30.    West Virginia Code § 46A-6B-4 requires that a motor vehicle body shop include with its estimate a written statement, notifying the motor vehicle owner when aftermarket crash parts are being used to repair the owner's vehicle. W. Va. Code § 46A-6B-4(b).

31.    West Virginia Code § 46A-6B-4 requires that the written statement notifying the motor vehicle owner when aftermarket crash parts are being used to repair the owner's vehicle be in made in a clear and conspicuous manner on a separate piece of paper in ten-point capital type. W. Va. Code § 46A-6B-4(c).

32.    By order entered August 20, 1998, the Circuit Court of Kanawha County, West Virginia, J. King, held that the provisions of W. Va. Code § 46A-6B-4 included the use of salvage crash parts. See Exhibit 1.

33.    Chandler's failed to include in its estimates a written statement on a separate piece of paper in ten-point capital type notifying the motor vehicle owner that salvaged crash parts are being used to repair the owner's vehicle.

34.    Chandler's conduct violates W. Va. Code § 46A-6B-4 and is an unfair or deceptive act or practice in violation of W. Va. Code § 46A-6-104.

## COUNT III
### (Concealment, Suppression, or Omission of Material Fact)

35.    The Plaintiff repeats and alleges the allegations set forth in paragraphs numbered 1 through 21 and, in addition thereto, alleges the following:

7

36.     West Virginia Code § 46A-6-102(7)(M) defines unfair or deceptive acts or

practices to include:

> The act, use or employment by any person of any deception,
> fraud, false pretense, false promise or misrepresentation, or
> the concealment, suppression or omission of any material fact
> with the intent that others rely upon such concealment,
> suppression or omission, in connection with the sale or
> advertisement of any goods or services, whether or not any
> person has in fact been misled, deceived or damaged thereby.

37.     Liberty Mutual's failure to disclose to consumers' that it had negotiated the

repair of their motor vehicles using salvaged crash parts as alleged in Count I of this

Complaint constitutes the concealment, suppression, or omission of a material fact, and

is an unfair or deceptive act or practice in violation of W. Va. Code § 46A-6-104.

38.     Chandler's failure to disclose to consumers' that it had repaired consumers'

motor vehicles using salvaged crash parts as alleged in Count II of this Complaint

constitutes the concealment, suppression, or omission of a material fact, and is an unfair

or deceptive act or practice in violation of W. Va. Code § 46A-6-104.

## PRAYER FOR RELIEF

WHEREFORE, the State requests that the Court grant the following relief against

Defendants/Respondents, Liberty Mutual Insurance Co. and Greg Chandler's Frame &

Body, LLC:

### Temporary Relief

A.     That this Court schedule a hearing on its petition for preliminary injunction

and thereafter enter an order, pursuant to W. Va. Code § 46A-7-110, that:

1.      Temporarily restrains the Defendant/Respondent Liberty Mutual Insurance Co. from requiring the use of salvaged crash parts when negotiating repairs for motor vehicles in the year of their manufacture or in the two succeeding years without the written consent of the owner of the motor vehicle in the State of West Virginia until such time as this matter is resolved;

2.      Temporarily restrains the Defendant/Respondent Greg Chandler's Frame & Body, LLC preparing estimates for the repair of motor vehicles using salvaged crash parts without including a written statement notifying the owner of the motor vehicle that salvaged crash parts will be used in the repairs in compliance with W. Va. Code § 46A-6B-1, et seq. until such time as this matter is resolved..

**Permanent Relief**

B.      That this Court, after a final hearing, enter an order that:

1.      Requires the Defendants/Respondents to provide restitution to all consumers whose vehicles were repaired in violation of W. Va. Code § § 46A-6B-3, -4.

2.      Requires the Defendants/Respondents to pay the State its investigative costs, court costs, and attorney's fees.

3.      Requires the Defendants/Respondents to pay civil penalties as set forth in W. Va. Code § 46A-7-111(2).

9

4.     Provides such further relief as this Court may deem just and proper

pursuant to this Court's general equitable powers.

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
ATTORNEY GENERAL

By Counsel

JILL L. MILES          (WV #4671)
DEPUTY ATTORNEY GENERAL
Consumer Protection Division
Post Office Box 1789
Charleston, West Virginia 25326-1789
Telephone:   304-558-8986

## VERIFICATION

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, TO-WIT:

I, JILL L. MILES, DEPUTY ATTORNEY GENERAL, being duly sworn, depose and

say that I am the counsel of record for the Plaintiff/Petitioner in the foregoing Complaint

and Petition for Preliminary Injunction; that I am familiar with the contents of the Complaint

and Petition for Preliminary Injunction; and that the facts and allegations contained therein

are true, except such as are therein stated upon information and belief, and that as to such

allegations I believe them to be true.

JILL L. MILES (WV State Bar # 4671)
DEPUTY ATTORNEY GENERAL
Consumer Protection / Antitrust Divisions

Taken, subscribed, and sworn to before me in the County and State aforesaid this

14th day of December, 2011.

My commission expires March 26, 2012.

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
RAQUEL GRAY
WV Attorney General's Office
P. O. Box 1789
Charleston, WV 25326-1789
My Commission Expires March 26, 2012

NOTARY PUBLIC



IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

THE WEST VIRGINIA AUTOMOTIVE
DISMANTLERS AND RECYCLERS
ASSOCIATION, THE WEST VIRGINIA
INSURANCE FEDERATION, INC., AND
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

          Plaintiffs,

v.                                     CIVIL ACTION NO. 97-C-2797

THE HONORABLE DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL OF THE STATE OF WEST
VIRGINIA, AND THE HONORABLE HANLEY C.
CLARK, COMMISSIONER OF INSURANCE OF
THE STATE OF WEST VIRGINIA,

          Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY JUDGMENT TO DEFENDANTS

On the 11th day of May, 1998, appeared the plaintiffs, the defendant, the Honorable Darrell V. McGraw, Attorney General of the State of West Virginia, and the defendant, the Honorable Hanley C. Clark, Insurance Commissioner of the State of West Virginia, all by counsel, for hearing on the plaintiffs' motion for summary judgment. The Attorney General filed a response to the motion for summary judgment, requesting that the Court deny plaintiffs' motion for summary judgment and that it grant summary judgment in his favor. The Insurance Commissioner filed no response to the motion.

The plaintiff seeks a declaratory judgment as to whether W. Va. Code § 46A-6B-1 *et seq.* restricts the use of used crash parts in the repair of motor vehicles by insurance companies and motor

vehicle body shops without the written consent of the owner of the motor vehicle. The relief sought by the plaintiffs is limited to declaratory relief. The evidence presents no genuine issue of material fact. Therefore, this matter is appropriate for disposition by summary judgment.

West Virginia Code § 46A-6B-1 contains a declaration of the legislative purpose of Article 6B. The legislative declaration is that the owners of motor vehicles requiring repair must be notified if aftermarket crash parts are to be used in the repair of their motor vehicles and that those owners must consent in writing to the use of aftermarket crash parts in the repair of their motor vehicles.

West Virginia Code § 46A-6B-2 provides definitions for certain terms used in Article 6B. "Crash parts" are defined as "exterior or interior sheet metal or fiberglass panels in parts that form the superstructure or body of the motor vehicle, including, but not limited to, fenders, bumpers, quarter panels, door panels, hoods, grills, fire walls, permanent roofs, wheel wells, and front and rear lamp display panels." W. Va. Code § 46A-6B-2(c). "Genuine crash parts" are defined as crash parts that are "(1) Manufactured by or for the original manufacturer of the motor vehicle to be repaired; and (2) That are authorized to carry the name or trademark of the original manufacturer of the motor vehicle." W. Va. Code § 46A-6B-2(d). "Aftermarket crash parts" are defined as crash parts that are "(1) Manufactured by a person other than the original manufacturer of the motor vehicle to be repaired; and (2) For which the original manufacturer of the motor vehicle has not authorized the use of its name or trademark by the manufacturer of the crash parts." W. Va. Code § 46A-6B-2(a).

W. Va. Code § 46A-6B-3 sets forth requirements and prohibitions with which motor vehicle body shops and insurers must comply when repairing motor vehicles. Motor vehicle body shops are required to use "genuine crash parts sufficient to maintain the manufacturer's warranty for fit, finish, structural integrity, corrosion resistance, dent resistance and crash performance" unless the motor vehicle owner consents in writing at the time of the repair to the use of aftermarket crash parts. An

insurance company is forbidden to require the use of aftermarket crash parts when negotiating repairs with any repairer, unless the owner consents in writing at the time of the repair to the use of aftermarket crash parts. Both the requirement with respect to motor vehicle body shops and the prohibition with respect to insurance companies are subject to time limitations which, for purposes of this action, need not be considered.

The issue presented in this action is whether a motor vehicle body shop or an insurer may require the owner of an automobile needing repair to accept a crash part that was manufactured by or for the original manufacturer of the motor vehicle and which is authorized to carry the name or trademark of the original manufacturer of the motor vehicle, and that has been removed from a salvaged vehicle.[1]

The plaintiffs contend that "salvage crash parts" meet the statutory definition of "genuine crash parts." They contend that the statutory scheme prohibits only the use of aftermarket parts without the consent of the owner. According to them, since "salvage crash parts" are genuine crash parts, motor vehicle body shops and insurers need not get permission from the owner of a motor vehicle before installing them on an automobile needing repair.

On the other hand, the Attorney General maintains that "salvage crash parts" do not meet the definition of "genuine crash parts." Since, in his view, "salvage crash parts" do not meet the definition of "genuine crash parts" under the statute, insurers and motor vehicle body shops must obtain written consent from the owners of motor vehicles before repairs are made using "salvage crash parts." If the owners do not consent, repairs must be made using new "genuine crash parts."

---

[1] The plaintiffs refer to these used crash parts as "recycled crash parts", while the Attorney General refers to them as "salvage crash parts." For the sake of consistency, the Court will refer to them as "salvage crash parts."

The answer to the question presented by this action is not as simple as either party contends. The plaintiffs are correct in their contention that "salvage crash parts" fall within the definition of "genuine crash parts." However, the fact that "salvage crash parts" are "genuine crash parts" is not dispositive.

W. Va. Code § 46A-6B-3 makes it clear that motor vehicle body shops may install only "genuine crash parts sufficient to maintain the manufacturer's warranty for fit, finish, structural integrity, corrosion resistance, dent resistance and crash performance" absent the consent of the owner of the motor vehicle. If motor vehicle body shops could use any "genuine crash parts," the qualifying language would be unnecessary. Because of the qualifying language, the Court concludes that the legislature recognized that there are two distinct types of "genuine crash parts." The first consists of parts which, when installed on motor vehicles, maintain automobile manufacturers' new car warranties. The second consists of parts which void all or part of automobile manufacturers' new car warranties. Based on undisputed evidence in the record respecting automobile manufacturers' new car warranties, "salvage crash parts" installed on an automobile void new car warranties with respect to those "salvage crash parts," and any original parts coming into contact with those "salvage crash parts," at least to the extent that the original parts are affected by the "salvage crash parts." Consequently, "salvage crash parts" fall into the second class of "genuine crash parts" which, in the literal language of the statute, are not to be installed by motor vehicle body shops.

When scrutinized closely, it is apparent that W. Va. Code § 46A-6B-3 is ambiguous. The first sentence requires a motor vehicle body shop to use "genuine crash parts" sufficient to maintain the automobile manufacturer's new car warranty, unless the owner of the motor vehicle consents to the use of "aftermarket crash parts." Read literally, this sentence prohibits the use of "genuine crash parts" that void an automobile manufacturer's new car warranty, including "salvage crash parts,"

since: 1) they do not maintain the automobile manufacturer's new car warranty, and 2) an owner may not consent to their use since they are not "aftermarket crash parts." The second sentence prohibits an insurance company from negotiating the repair of a motor vehicle using "aftermarket crash parts," unless the owner of the motor vehicle to be repaired consents to their use. This qualified prohibition applies only to "aftermarket crash parts." Read literally, the second sentence permits an insurer to negotiate the repair of an automobile using any "genuine crash parts," regardless of whether or not they maintain or void an automobile manufacturer's new car warranty. This includes "salvage crash parts."

There is a conflict between the first and second sentences of § 46A-6B-3. A literal reading of the second sentence would permit an insurance company to negotiate with a motor vehicle body shop, a "repairer" under the statutory language, for the use of any "genuine crash parts," including "salvage crash parts." However, a literal reading of the first sentence would prohibit a motor vehicle body shop from using "salvage crash parts," because their use would void automobile manufacturers' new car warranties. Thus, a motor vehicle body shop would be placed in the position of having an insurer pay it to install "salvage crash parts," while it would be required to install new, unused "genuine crash parts." An ambiguity is created insofar as an insurance company may require the use of "salvage crash parts," while a motor vehicle body shop may not install them.[2] The Court must resolve the ambiguity created by W. Va. Code § 46A-6B-3.

---

[2] Another possible interpretation is that the legislature intended motor vehicle body shops to absorb the difference in the cost of a new, unused "genuine crash part" and the amount the insurance company paid for a "salvage crash part." This puts motor vehicle body shops in position of subsidizing the cost repair of damage motor vehicles. However, it is insurance companies, not motor vehicle body shops, that are in the business of calculating the risks and insuring for losses to automobiles. The Court cannot conceive that this is what the legislature intended to occur.

The Consumer Credit and Protection Act is a remedial statute and should be liberally interpreted to achieve its purpose. *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, 194 W. Va. 770, 777, 461 S.E.2d 516, 523 (1995). In general terms, the purpose of the Act is to protect consumers in the State of West Virginia. The consumers protected by Article 6B are the owners of motor vehicles. The Court must construe any ambiguity in the statute in favor of the Attorney General and, ultimately, the consumers in the State of West Virginia.

The Court must look to the intent of the legislature to determine the proper construction of the statute. The stated legislative purpose of Article 6B is to require disclosure of information about certain replacement crash parts and to prevent motor vehicle body shops and insurance companies from requiring the use of "aftermarket crash parts," unless the owner of the motor vehicle consents in writing. As explicitly stated in § 46A-6B-3 and the language of the notice required by W. Va. Code § 46A-6B-4, under no circumstances may motor vehicle body shops or insurance companies require the use of crash parts that void automobile manufacturers' new car warranties, unless the owner of the motor vehicle expressly consents in writing to their use.

None of the parties contend that the legislature intended to prohibit the use of "salvage crash parts." In spite of the fact that the first sentence of W. Va. Code § 46A-6B-3 gives some indication that their use is prohibited, the Court is of the opinion that this is not what the legislature intended. Instead, considering all of the provisions of Article 6B, the Court finds that the legislature's overarching intent is to prevent motor vehicle body shops and insurers from requiring the installation of replacement crash parts that would void automobile manufacturers' new car warranties, unless they complied with certain requirements. Specifically, motor vehicle body shops and insurers are required to ensure that the owners of motor vehicles requiring repairs are made aware that these types of parts are to be installed, that the owners are made aware that installation of these types of parts will void

their new car warranties and that the owners of the motor vehicles give their informed, express and written consent to the installation of these types of replacement parts. Since "salvage crash parts" void automobile manufacturers' new car warranties, the consent of the owners of motor vehicles to be repaired is required before "salvage crash parts" are installed.

Based on the foregoing, the Court does hereby DECLARE that when automobile insurance companies negotiate the repair of automobiles, and when motor vehicle body shops repair automobiles, they must negotiate and effect the repair of automobiles using new "genuine crash parts" sufficient to maintain the automobile manufacturer's new car warranty for that part, unless they first obtain the consent of the owner of the automobile to be repaired to use "aftermarket crash parts," as defined by the Act, or "salvage crash parts," as the term has been used in this opinion.

Consistent with this declaration, the Court does hereby ORDER that the plaintiffs' motion for summary judgment be denied, and that summary judgment be granted in favor of the defendant, the Honorable Darrell V. McGraw, Attorney General of the State of West Virginia. The remaining motions pending before the Court are rendered moot.

The Court does FURTHER ORDER that this matter be stricken from the active docket of this Court and that the Clerk furnish all counsel of record with a copy of this Order.

The Court notes the objection and exception of all parties to the extent that they are adversely affected by this Order.

ENTER this 20 TH day of August, 1998.

CHARLES E. KING, JR., Circuit Judge
Thirteenth Judicial Circuit

Office of the Secretary of State
Building 1 Suite 157-K
1900 Kanawha Blvd E
Charleston, WV 25305




9171 9237 9000 1000 5706 38



*FILED*

2011 DEC 19 PM 2:46

CATHY S. GATSON
KANAWHA CO. CIRCUIT CLERK

**Natalie E. Tennant**
Secretary of State
Telephone: 304-558-6000
Toll Free: 866-SOS-VOTE
www.wvsos.com

| | |
|---|---|
| ControlNumber: | 326331 |
| Defendant: | Liberty Mutual Insurance Company |
| County: | 20 |
| | 12/15/2011 |
| Civil Action: | 11-C-2231 |

Cathy Gatson, Circuit Clerk
Kanawha County Courthouse
111 Court Street
Charleston WV 25301-2500

I am enclosing:

| | | |
|---|---|---|
| ___ summons | ___ affidavit | _1_ summons and complaint |
| ___ notice | ___ answer | ___ summons and verified complaint |
| ___ order | ___ cross-claim | ___ summons and amended complaint |
| _1_ petition | ___ counterclaim | ___ 3rd party summons and complaint |
| ___ motion | ___ request | ___ notice of materialmans lien |
| ___ suggestions | ___ notice to redeem | ___ notice of mechanic's lien |
| ___ interrogatories | ___ request for production | ___ re-issue summons and complaint |
| ___ discovery | ___ request for admissions | ___ subpoena duces tecum |
| ___ suggestee execution | ___ notice of uim claim | ___ Other |
| ___ subpoena | ___ writ | |
| ___ stipulation | ___ writ of mandamus | |

which was served on the Secretary at the State Capitol as your statutory attorney-in-fact. According to law, I have
accepted service of process in the name and on behalf of your authorized insurance company.

*Please note that this office has no connection whatsoever with the enclosed documents other than to accept service of
process in your name and on behalf as your attorney-in-fact. Please address any questions about this document directly
to the court or the plaintiff's attorney, shown in the enclosed paper, **not to the Secretary of State's office.***

*Sincerely,*

Natalie E Tennant

Natalie E. Tennant
Secretary of State

## SUMMONS

### CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

STATE OF WEST VIRGINIA, ex rel.
DARRELL V. MCGRAW, JR., Attorney General,

Plaintiff/Petitioner

vs.                                          Civil Action No. _11-C-2231_
                                                              King

LIBERTY MUTUAL INSURANCE COMPANY,
a Massachusetts corporation; and
GREG CHANDLER'S FRAME & BODY SHOP, LLC,
a West Virginia limited liability corporation,

Defendants/Respondents.

To the above-named Defendant:

LIBERTY MUTUAL INSURANCE COMPANY
c/o    Corporation Service Company
       209 W. Washington Street
       Charleston, WV  25302

IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby summoned

and required to serve upon Jill L. Miles, Plaintiff's attorney, whose address is Post Office

Box 1789, Charleston, WV 25326-1789, an answer, including any related counterclaim you

may have, to the Complaint and Petition for Preliminary Injunction filed against you in the

above-styled civil action, a true copy of which is herewith delivered to you. You are

required to serve your answer within ____30____ days after service of this summons upon

you, exclusive of the day of service. If you fail to do so, judgment by default will be taken

against you for the relief demanded in the complaint and you will be thereafter barred for

asserting in another action any claim you may have which must be asserted by

counterclaim in the above-styled civil action.

Dated _12-15-11_

Cathy S. Catson
Clerk of Court
By auDod

FILED

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

2011 DEC 19 PH 2: 36

CATHY S. GATSON, CLERK
KANAWHA CO. CIRCUIT COURT

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
Attorney General,

        Plaintiff/Petitioner,

CIVIL ACTION NO. _11-C-2231_

JUDGE _King_

LIBERTY MUTUAL INSURANCE COMPANY.,
a Massachusetts corporation; and,
GREG CHANDLER'S FRAME & BODY, LLC,
a West Virginia limited liability corporation,

        Defendants/Respondents.

## COMPLAINT AND PETITION
## FOR TEMPORARY AND PERMANENT INJUNCTION

This action is brought pursuant to the West Virginia Consumer Credit and Protection

Act, West Virginia Code § 46A-1-101 *et seq.* (hereafter "WVCCPA"). Plaintiff/Petitioner,

the State of West Virginia by Darrell V. McGraw, Jr., Attorney General (hereafter "the

State"), has reason to believe that Defendants/Respondents Liberty Mutual Insurance Co.,

a Massachusetts corporation, (hereinafter "Liberty Mutual") and Greg Chandler's Frame

& Body, LLC, a West Virginia limited liability corporation, (hereinafter "Chandler's") have

violated the WVCCPA. The State brings this action to enjoin and restrain Defendants from

engaging in unfair or deceptive acts or practices in connection with the repair of

automobiles. The State seeks preliminary and permanent injunctive relief and other

1

equitable relief including, but not limited to, investigative costs, consumer restitution, court costs, and attorney's fees.

## THE PARTIES

1.     The Plaintiff, the State of West Virginia, brings this action by and through Darrell V. McGraw, Jr., Attorney General for the State of West Virginia.  The Attorney General is authorized to bring this action pursuant to W. Va. Code § § 46A-7-108, -110, and -111 and § 46A-6B-6.

2.     Defendant/Respondent Liberty Mutual Insurance Company is a Massachusetts corporation with its principal place of business situate at 175 Berkeley Street, Boston, Massachusetts, 02116.

3.     Defendant/Respondent Greg Chandler's Frame & Body, LLC is a limited liability West Virginia corporation with its principal place of business situate at 620 5th Avenue, St. Albans, West Virginia, 25177.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction to hear this matter pursuant to Article VIII, Section 6 of the West Virginia Constitution and W. Va. Code § 51-2-2.

5.     Venue is proper in this Court pursuant to W. Va. Code § § 46A-7-114 and 56-1-1.

## RELEVANT PERIOD OF TIME

6.     The relevant period of time for the events alleged in this complaint begins August 20, 1998 and continues through the present and into the future.

2

## FACTS

7.     Liberty Mutual engages in the sale of auto insurance to West Virginia consumers and is regularly involved in the repair of motor vehicles.

8.     Liberty Mutual negotiates repairs of motor vehicles with motor vehicle body shops for West Virginia consumers it insures.

9.     As such, Liberty's business practices are subject to the provisions set forth in the Automotive Crash Parts Act, W. Va. Code § 46A-6B-1 et seq., and the West Virginia Consumer Credit and Protection Action, W. Va. Code § 46A-1-101 et seq. (WVCCPA).

10.    West Virginia Code § 46A-6B-2(f) defines "motor vehicle body shop" to mean "any person or business establishment that removes, replaces, reconditions or repairs sheet metal or fiberglass motor vehicle crash parts."

11.    Chandler's conducts business in West Virginia as a motor vehicle body shop.

12.    Both "insurance companies" and "motor vehicle body shops" are required to comply with the Automotive Crash Parts Act and the WVCCPA. W. Va. Code § 46A-6B-1.

13.    The Automotive Crash Parts Act prohibits "the use of aftermarket crash parts when negotiating repairs of the motor vehicle with any repairer for a period of three years, the year the motor vehicle was manufactured and the two succeeding years thereafter, unless the motor vehicle owner consents in writing at the time of the repair to the use of the aftermarket crash parts." W. Va. Code § 46A-6B-3.

14.    The Automotive Crash Parts Act mandates that motor vehicle body shops must repair vehicles within three years of manufacture with only "genuine crash parts sufficient to maintain the manufacturer's warranty for fit, finish, structural integrity, corrosion resistance, dent resistance and crash performance unless the motor vehicle owner

3

consents in writing at the time of the repair to the use of aftermarket crash parts." W. Va.

Code § 46A-6B-3.

15.    The Automotive Crash Parts Act requires that

> [W]hen automobile insurance companies negotiate the repair
> of automobiles, and when the motor vehicle body shops repair
> automobiles, they must negotiate and effect the repair of the
> automobiles using new "genuine crash parts" sufficient to
> maintain the automobile manufacturer's new car warranty for
> that part, unless they first obtain the consent of the owner of
> the automobile to be repaired to use "aftermarket crash parts,"
> . . . or "salvage crash parts."

The West Virginia Automotive Dismantlers and Recyclers Association, et al. v. McGraw,

et al., Civil Action No. 97-C-2797 (W. Va. Circ. Ct. Kanawha County Aug. 20, 1998). See

Order, attached hereto and incorporated by reference herein as Exhibit 1.

16.    Liberty Mutual has a contractual agreement with Chandler's whereby

Chandler's is considered to be a Total Liberty Care or "TLC" motor vehicle body shop.

17.    A "TLC" automobile body shop is authorized to do repairs on automobiles for

which claims have been filed with Liberty Mutual and is also authorized to write the

estimates for those repairs.

18.    When negotiating the repairs of motor vehicles with Chandler's for a period

of three years, the year the motor vehicle was manufactured and the two succeeding years

thereafter, Liberty Mutual required that Chandler's write the estimates using salvage crash

parts, without the written consent of the motor vehicle owner at the time of the repair as

required by W. Va. Code § 46A-6B-3.

19.    Liberty Mutual instructed Chandler's that when repairing vehicles in the year

of their manufacture or in the two succeeding years thereafter, the repairs must be made

4

using salvage crash parts, without obtaining the written consent of the motor vehicle owner at the time of the repair as required by W. Va. Code § 46A-6B-3. . . .

20.     When preparing estimates for vehicles in the year of their manufacture or in the two succeeding years thereafter, Chandler's did not obtain West Virginia consumers' written consent as required by W. Va. Code § 46A-6B-4.

21.     When repairing vehicles in the year of their manufacture or in the two succeeding years thereafter, Chandler's did not obtain West Virginia consumers' written consent required by W. Va. Code § 46A-6B-4 that the repairs be done using salvaged crash parts.

## COUNT I
### (Requiring the Use of Salvaged Crash Parts when Negotiating Repairs Without Obtaining Consumers' Written Consent )

22.     The Plaintiff repeats and alleges the allegations set forth in paragraphs numbered 1 through 21 and, in addition thereto, alleges the following:

23.     The purpose of West Virginia Code § 46A-6B-1 et seq. is to "require disclosure to motor vehicle owners of information on certain replacement crash parts for repairs to their motor vehicles and to prevent both motor vehicle body shops and insurance companies from requiring the use of aftermarket crash parts for repair unless the motor vehicle owner consents in writing at the time of the repair." W. Va. Code § 46A-6B-1.

24.     West Virginia Code § 46A-6B-2 defines "crash parts" to mean "exterior or interior sheet metal or fiberglass panels and parts that form the superstructure or body of a motor vehicle, including, but not limited to, fenders, bumpers, quarter panels, door

5

panels, hoods, grills, fire walls, permanent roofs, wheel wells and front and rear lamp display panels." W. Va. Code § 46A-6B-2(c).

25.     West Virginia Code § 46A-6B-3 provides that "no insurance company may require the use of aftermarket crash parts when negotiating the repairs of motor vehicles with any repairer for a period of three years, the year the motor vehicle was manufactured and the two succeeding years thereafter, unless the motor vehicle owner consents in writing at the time of the repair to the use of aftermarket crash parts."

26.     By order entered August 20, 1998, the Circuit Court of Kanawha County, West Virginia, J. King, held that W. Va. Code § 46A-6B-3 included the use of salvage crash parts. See Exhibit 1.

27.     Liberty Mutual requires the use of salvaged crash parts when negotiating the repairs of motor vehicles with Chandler's for a period of three years, the year the motor vehicle was manufactured and the two succeeding years thereafter, without the motor vehicle owner's consent in writing at the time of the repair to the use of the salvaged crash parts.

28.     Liberty Mutual's conduct violates W. Va. Code § 46A-6B-3 and is an unfair or deceptive act or practice in violation of W. Va. Code § 46A-6-104.

## COUNT II
### (Failure to Obtain Consumers' Written Consent
### When Negotiating Repairs Using Salvaged Crash Parts)

29.     The Plaintiff repeats and alleges the allegations set forth in paragraphs numbered 1 through 21 and, in addition thereto, alleges the following:

6

30.     West Virginia Code § 46A-6B-4 requires that a motor vehicle body shop include with its estimate a written statement, notifying the motor vehicle owner when aftermarket crash parts are being used to repair the owner's vehicle. W. Va. Code § 46A-6B-4(b).

31.     West Virginia Code § 46A-6B-4 requires that the written statement notifying the motor vehicle owner when aftermarket crash parts are being used to repair the owner's vehicle be in made in a clear and conspicuous manner on a separate piece of paper in ten-point capital type. W. Va. Code § 46A-6B-4(c).

32.     By order entered August 20, 1998, the Circuit Court of Kanawha County, West Virginia, J. King, held that the provisions of W. Va. Code § 46A-6B-4 included the use of salvage crash parts. See Exhibit 1.

33.     Chandler's failed to include in its estimates a written statement on a separate piece of paper in ten-point capital type notifying the motor vehicle owner that salvaged crash parts are being used to repair the owner's vehicle.

34.     Chandler's conduct violates W. Va. Code § 46A-6B-4 and is an unfair or deceptive act or practice in violation of W. Va. Code § 46A-6-104.

## COUNT III
### (Concealment, Suppression, or
### Omission of Material Fact)

35.     The Plaintiff repeats and alleges the allegations set forth in paragraphs numbered 1 through 21 and, in addition thereto, alleges the following:

7

36.    West Virginia Code § 46A-6-102(7)(M) defines unfair or deceptive acts or practices to include:

> The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby.

37.    Liberty Mutual's failure to disclose to consumers' that it had negotiated the repair of their motor vehicles using salvaged crash parts as alleged in Count I of this Complaint constitutes the concealment, suppression, or omission of a material fact, and is an unfair or deceptive act or practice in violation of W. Va. Code § 46A-6-104.

38.    Chandler's failure to disclose to consumers' that it had repaired consumers' motor vehicles using salvaged crash parts as alleged in Count II of this Complaint constitutes the concealment, suppression, or omission of a material fact, and is an unfair or deceptive act or practice in violation of W. Va. Code § 46A-6-104.

## PRAYER FOR RELIEF

WHEREFORE, the State requests that the Court grant the following relief against Defendants/Respondents, Liberty Mutual Insurance Co. and Greg Chandler's Frame & Body, LLC:

## Temporary Relief

A.    That this Court schedule a hearing on its petition for preliminary injunction and thereafter enter an order, pursuant to W. Va. Code § 46A-7-110, that:

8

1.     Temporarily restrains the Defendant/Respondent Liberty Mutual Insurance Co. from requiring the use of salvaged crash parts when negotiating repairs for motor vehicles in the year of their manufacture or in the two succeeding years without the written consent of the owner of the motor vehicle in the State of West Virginia until such time as this matter is resolved;

2.     Temporarily restrains the Defendant/Respondent Greg Chandler's Frame & Body, LLC preparing estimates for the repair of motor vehicles using salvaged crash parts without including a written statement notifying the owner of the motor vehicle that salvaged crash parts will be used in the repairs in compliance with W. Va. Code § 46A-6B-1, *et seq.* until such time as this matter is resolved..

### Permanent Relief

B.     That this Court, after a final hearing, enter an order that :

1.     Requires the Defendants/Respondents to provide restitution to all consumers whose vehicles were repaired in violation of W. Va. Code § § 46A-6B-3, -4.

2.     Requires the Defendants/Respondents to pay the State its investigative costs, court costs, and attorney's fees.

3.     Requires the Defendants/Respondents to pay civil penalties as set forth in W. Va. Code § 46A-7-111(2).

9

4.    Provides such further relief as this Court may deem just and proper

pursuant to this Court's general equitable powers.

STATE OF WEST VIRGINIA ex rel.
DARRELL V. McGRAW, JR.,
ATTORNEY GENERAL

By Counsel

Auu L M.lu

JILL L. MILES        (WV #4671)
DEPUTY ATTORNEY GENERAL
Consumer Protection Division
Post Office Box 1789
Charleston, West Virginia 25326-1789
Telephone:   304-558-8986

## **VERIFICATION**

STATE OF WEST VIRGINIA,
COUNTY OF KANAWHA, TO-WIT:

I, JILL L. MILES, DEPUTY ATTORNEY GENERAL, being duly sworn, depose and

say that I am the counsel of record for the Plaintiff/Petitioner in the foregoing Complaint

and Petition for Preliminary Injunction; that I am familiar with the contents of the Complaint

and Petition for Preliminary Injunction; and that the facts and allegations contained therein

are true, except such as are therein stated upon information and belief, and that as to such

allegations I believe them to be true.

JILL L. MILES (WV State Bar # 4671)
DEPUTY ATTORNEY GENERAL
Consumer Protection / Antitrust Divisions

Taken, subscribed, and sworn to before me in the County and State aforesaid this

14th day of December, 2011.

My commission expires March 26, 2012.

NOTARY PUBLIC

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
RAQUEL GRAY
WV Attorney General's Office
P. O. Box 1789
Charleston, WV 25326-1789
My Commission Expires March 26, 2012



IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

THE WEST VIRGINIA AUTOMOTIVE
DISMANTLERS AND RECYCLERS
ASSOCIATION, THE WEST VIRGINIA
INSURANCE FEDERATION, INC., AND
STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Plaintiffs,

v.                           CIVIL ACTION NO. 97-C-2797

THE HONORABLE DARRELL V. MCGRAW, JR.,
ATTORNEY GENERAL OF THE STATE OF WEST
VIRGINIA, AND THE HONORABLE HANLEY C.
CLARK, COMMISSIONER OF INSURANCE OF
THE STATE OF WEST VIRGINIA,

        Defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
## AND GRANTING SUMMARY JUDGMENT TO DEFENDANTS

On the 11th day of May, 1998, appeared the plaintiffs, the defendant, the Honorable Darrell

V. McGraw, Attorney General of the State of West Virginia, and the defendant, the Honorable

Hanley C. Clark, Insurance Commissioner of the State of West Virginia, all by counsel, for hearing

on the plaintiffs' motion for summary judgment. The Attorney General filed a response to the motion

for summary judgment, requesting that the Court deny plaintiffs' motion for summary judgment and

that it grant summary judgment in his favor. The Insurance Commissioner filed no response to the

motion.

The plaintiff seeks a declaratory judgment as to whether W. Va. Code § 46A-6B-1 *et seq.*

restricts the use of used crash parts in the repair of motor vehicles by insurance companies and motor

vehicle body shops without the written consent of the owner of the motor vehicle. The relief sought by the plaintiffs is limited to declaratory relief. The evidence presents no genuine issue of material fact. Therefore, this matter is appropriate for disposition by summary judgment.

West Virginia Code § 46A-6B-1 contains a declaration of the legislative purpose of Article 6B. The legislative declaration is that the owners of motor vehicles requiring repair must be notified if aftermarket crash parts are to be used in the repair of their motor vehicles and that those owners must consent in writing to the use of aftermarket crash parts in the repair of their motor vehicles.

West Virginia Code § 46A-6B-2 provides definitions for certain terms used in Article 6B. "Crash parts" are defined as "exterior or interior sheet metal or fiberglass panels in parts that form the superstructure or body of the motor vehicle, including, but not limited to, fenders, bumpers, quarter panels, door panels, hoods, grills, fire walls, permanent roofs, wheel wells, and front and rear lamp display panels." W. Va. Code § 46A-6B-2(c). "Genuine crash parts" are defined as crash parts that are "(1) Manufactured by or for the original manufacturer of the motor vehicle to be repaired; and (2) That are authorized to carry the name or trademark of the original manufacturer of the motor vehicle." W. Va. Code § 46A-6B-2(d). "Aftermarket crash parts" are defined as crash parts that are "(1) Manufactured by a person other than the original manufacturer of the motor vehicle to be repaired; and (2) For which the original manufacturer of the motor vehicle has not authorized the use of its name or trademark by the manufacturer of the crash parts." W. Va. Code § 46A-6B-2(a).

W. Va. Code § 46A-6B-3 sets forth requirements and prohibitions with which motor vehicle body shops and insurers must comply when repairing motor vehicles. Motor vehicle body shops are required to use "genuine crash parts sufficient to maintain the manufacturer's warranty for fit, finish, structural integrity, corrosion resistance, dent resistance and crash performance" unless the motor vehicle owner consents in writing at the time of the repair to the use of aftermarket crash parts. An

insurance company is forbidden to require the use of aftermarket crash parts when negotiating repairs with any repairer, unless the owner consents in writing at the time of the repair to the use of aftermarket crash parts. Both the requirement with respect to motor vehicle body shops and the prohibition with respect to insurance companies are subject to time limitations which, for purposes of this action, need not be considered.

The issue presented in this action is whether a motor vehicle body shop or an insurer may require the owner of an automobile needing repair to accept a crash part that was manufactured by or for the original manufacturer of the motor vehicle and which is authorized to carry the name or trademark of the original manufacturer of the motor vehicle, and that has been removed from a salvaged vehicle.[1]

The plaintiffs contend that "salvage crash parts" meet the statutory definition of "genuine crash parts." They contend that the statutory scheme prohibits only the use of aftermarket parts without the consent of the owner. According to them, since "salvage crash parts" are genuine crash parts, motor vehicle body shops and insurers need not get permission from the owner of a motor vehicle before installing them on an automobile needing repair.

On the other hand, the Attorney General maintains that "salvage crash parts" do not meet the definition of "genuine crash parts." Since, in his view, "salvage crash parts" do not meet the definition of "genuine crash parts" under the statute, insurers and motor vehicle body shops must obtain written consent from the owners of motor vehicles before repairs are made using "salvage crash parts." If the owners do not consent, repairs must be made using new "genuine crash parts."

---

[1] The plaintiffs refer to these used crash parts as "recycled crash parts", while the Attorney General refers to them as "salvage crash parts." For the sake of consistency, the Court will refer to them as "salvage crash parts."

The answer to the question presented by this action is not as simple as either party contends. The plaintiffs are correct in their contention that "salvage crash parts" fall within the definition of "genuine crash parts." However, the fact that "salvage crash parts" are "genuine crash parts" is not dispositive.

W. Va. Code § 46A-6B-3 makes it clear that motor vehicle body shops may install only "genuine crash parts sufficient to maintain the manufacturer's warranty for fit, finish, structural integrity, corrosion resistance, dent resistance and crash performance" absent the consent of the owner of the motor vehicle. If motor vehicle body shops could use any "genuine crash parts," the qualifying language would be unnecessary. Because of the qualifying language, the Court concludes that the legislature recognized that there are two distinct types of "genuine crash parts." The first consists of parts which, when installed on motor vehicles, maintain automobile manufacturers' new car warranties. The second consists of parts which void all or part of automobile manufacturers' new car warranties. Based on undisputed evidence in the record respecting automobile manufacturers' new car warranties, "salvage crash parts" installed on an automobile void new car warranties with respect to those "salvage crash parts," and any original parts coming into contact with those "salvage crash parts," at least to the extent that the original parts are affected by the "salvage crash parts." Consequently, "salvage crash parts" fall into the second class of "genuine crash parts" which, in the literal language of the statute, are not to be installed by motor vehicle body shops.

When scrutinized closely, it is apparent that W. Va. Code § 46A-6B-3 is ambiguous. The first sentence requires a motor vehicle body shop to use "genuine crash parts" sufficient to maintain the automobile manufacturer's new car warranty, unless the owner of the motor vehicle consents to the use of "aftermarket crash parts." Read literally, this sentence prohibits the use of "genuine crash parts" that void an automobile manufacturer's new car warranty, including "salvage crash parts,"

since: 1) they do not maintain the automobile manufacturer's new car warranty, and 2) an owner may not consent to their use since they are not "aftermarket crash parts." The second sentence prohibits an insurance company from negotiating the repair of a motor vehicle using "aftermarket crash parts," unless the owner of the motor vehicle to be repaired consents to their use. This qualified prohibition applies only to "aftermarket crash parts." Read literally, the second sentence permits an insurer to negotiate the repair of an automobile using any "genuine crash parts," regardless of whether or not they maintain or void an automobile manufacturer's new car warranty. This includes "salvage crash parts."

There is a conflict between the first and second sentences of § 46A-6B-3. A literal reading of the second sentence would permit an insurance company to negotiate with a motor vehicle body shop, a "repairer" under the statutory language, for the use of any "genuine crash parts," including "salvage crash parts." However, a literal reading of the first sentence would prohibit a motor vehicle body shop from using "salvage crash parts," because their use would void automobile manufacturers' new car warranties. Thus, a motor vehicle body shop would be placed in the position of having an insurer pay it to install "salvage crash parts," while it would be required to install new, unused "genuine crash parts." An ambiguity is created insofar as an insurance company may require the use of "salvage crash parts," while a motor vehicle body shop may not install them.[2] The Court must resolve the ambiguity created by W. Va. Code § 46A-6B-3.

---

[2] Another possible interpretation is that the legislature intended motor vehicle body shops to absorb the difference in the cost of a new, unused "genuine crash part" and the amount the insurance company paid for a "salvage crash part." This puts motor vehicle body shops in position of subsidizing the cost repair of damage motor vehicles. However, it is insurance companies, not motor vehicle body shops, that are in the business of calculating the risks and insuring for losses to automobiles. The Court cannot conceive that this is what the legislature intended to occur.

The Consumer Credit and Protection Act is a remedial statute and should be liberally interpreted to achieve its purpose. *State ex rel. McGraw v. Scott Runyan Pontiac-Buick*, 194 W. Va. 770, 777, 461 S.E.2d 516, 523 (1995). In general terms, the purpose of the Act is to protect consumers in the State of West Virginia. The consumers protected by Article 6B are the owners of motor vehicles. The Court must construe any ambiguity in the statute in favor of the Attorney General and, ultimately, the consumers in the State of West Virginia.

The Court must look to the intent of the legislature to determine the proper construction of the statute. The stated legislative purpose of Article 6B is to require disclosure of information about certain replacement crash parts and to prevent motor vehicle body shops and insurance companies from requiring the use of "aftermarket crash parts," unless the owner of the motor vehicle consents in writing. As explicitly stated in § 46A-6B-3. and the language of the notice required by W. Va. Code § 46A-6B-4, under no circumstances may motor vehicle body shops or insurance companies require the use of crash parts that void automobile manufacturers' new car warranties, unless the owner of the motor vehicle expressly consents in writing to their use.

None of the parties contend that the legislature intended to prohibit the use of "salvage crash parts." In spite of the fact that the first sentence of W. Va. Code § 46A-6B-3 gives some indication that their use is prohibited, the Court is of the opinion that this is not what the legislature intended. Instead, considering all of the provisions of Article 6B, the Court finds that the legislature's overarching intent is to prevent motor vehicle body shops and insurers from requiring the installation of replacement crash parts that would void automobile manufacturers' new car warranties, unless they complied with certain requirements. Specifically, motor vehicle body shops and insurers are required to ensure that the owners of motor vehicles requiring repairs are made aware that these types of parts are to be installed, that the owners are made aware that installation of these types of parts will void

their new car warranties and that the owners of the motor vehicles give their informed, express and written consent to the installation of these types of replacement parts. Since "salvage crash parts" void automobile manufacturers' new car warranties, the consent of the owners of motor vehicles to be repaired is required before "salvage crash parts" are installed.

Based on the foregoing, the Court does hereby DECLARE that when automobile insurance companies negotiate the repair of automobiles, and when motor vehicle body shops repair automobiles, they must negotiate and effect the repair of automobiles using new "genuine crash parts" sufficient to maintain the automobile manufacturer's new car warranty for that part, unless they first obtain the consent of the owner of the automobile to be repaired to use "aftermarket crash parts," as defined by the Act, or "salvage crash parts," as the term has been used in this opinion.

Consistent with this declaration, the Court does hereby ORDER that the plaintiffs' motion for summary judgment be denied, and that summary judgment be granted in favor of the defendant, the Honorable Darrell V. McGraw, Attorney General of the State of West Virginia. The remaining motions pending before the Court are rendered moot.

The Court does FURTHER ORDER that this matter be stricken from the active docket of this Court and that the Clerk furnish all counsel of record with a copy of this Order.

The Court notes the objection and exception of all parties to the extent that they are adversely affected by this Order.

ENTER this 20TH day of August, 1998.

CHARLES E. KING, JR., Circuit Judge
Thirteenth Judicial Circuit

*USPS requires a signature for non-delivered, return-to-sender certified letters. Listing on this document does not guarantee delivery. If the signature below is that of either Kathy Thomas, Deanna Karlen, State of West Virginia or Central Mailing Office, this letter has not been served. Please verify all signature pages.*

1      12/26/2011 12:00:00 AM     Greg Chandler's Frame & Body, LLC

2      12/26/2011 12:00:00 AM     Liberty Mutual Insurance Company

STATUS DATE:                    12/26/2011 12:00:00 AM
CERTIFIED NUMBER:              9171923790001000570638
CIVIL ACTION NUMBER:          11-C-2231
CONTROL NUMBER:               326331
MAILED TO:                     Liberty Mutual Insurance Company


**UNITED STATES POSTAL SERVICE.**

Date Produced: 12/26/2011

WV SECRETARY OF STATE

The following is the delivery information for Certified Mail™ item number 7192 3790 0010
0057 0638. Our records indicate that this item was delivered on 12/19/2011 at 10:22 a.m. in
CHARLESTON, WV, 25302. The scanned image of the recipient information is provided
below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional
assistance, please contact your local post office or Postal Service representative.

Sincerely,

United States Postal Service

The customer reference number shown below is not validated or endorsed by the United
States Postal Service. It is solely for customer use.

Customer Reference Number: 3418879 47695721

STATUS DATE:              12/26/2011 12:00:00 AM
CERTIFIED NUMBER:         9171923790001000570638
CIVIL ACTION NUMBER:      11-C-2231
CONTROL NUMBER:           326331
MAILED TO:                Liberty Mutual Insurance Company



**UNITED STATES**
**POSTAL SERVICE**

Date Produced: 12/26/2011

WV SECRETARY OF STATE

The following is the delivery information for Certified Mail™ item number 7192 3790 0010 0057 0638. Our records indicate that this item was delivered on 12/19/2011 at 10:22 a.m. in CHARLESTON, WV, 25302. The scanned image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,

United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

Customer Reference Number: 3418879 47695721