IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STATE OF WEST VIRGINIA, et al.,

          Plaintiffs,

v.                                          CIVIL ACTION NO. 2:12-cv-00046

LIBERTY MUTUAL INSURANCE COMPANY, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the State's Motion to Remand and for Costs [Docket 4]. For the reasons discussed below, the Motion to Remand is **GRANTED** and the Motion for Costs is **DENIED**.

**I.    Background**

The plaintiff, State of West Virginia ex. rel., filed a complaint and petition for temporary and permanent injunction against the defendants, Liberty Mutual Insurance Company and Greg Chandler's Frame & Body, LLC, in the Circuit Court of Kanawha County, West Virginia on December 15, 2011. The defendants removed the action on January 10, 2012. The following day, the plaintiff filed the instant motion. The defendants responded on January 24, 2012, and the plaintiff did not reply.

1

The plaintiff alleges that the defendants violated the Automotive Crash Parts Act ("Crash Parts Act") and the West Virginia Consumer Credit and Protection Act by repairing new vehicles using salvage crash parts[1] without obtaining the written consent of the motor vehicle owner at the time of the repair. (Compl. [Docket 1-1], at 7.) A salvage crash part is one manufactured by or for the original manufacturer that is authorized to carry the name or trademark of the original manufacturer, but has been removed from a salvage vehicle. (Defs.' Mot. Dismiss [Docket 7], Ex. A, at 6.)

## II. Standard of Review

Because federal courts are courts of limited jurisdiction, the burden of establishing jurisdiction rests on the party seeking to invoke the court's jurisdiction. *Barbour v. Int'l Union*, 640 F.3d 599, 605 (4th Cir. 2011) (en banc). In a removed case, such as this one, that burden falls on the party seeking removal. *See id.* Moreover, removal jurisdiction is to be strictly construed, "inasmuch as the removal of cases from state to federal court raises significant federalism concerns." *Id.* Thus, any doubts as to the existence of federal jurisdiction must be resolved in favor of remanding the action to state court. *See Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) (en banc).

## III. Discussion

An action filed in state court can only be removed to federal court if the "district courts of the United States have original jurisdiction" over the matter. 28 U.S.C. § 1441(a). In other words, the question is whether the action could have originally been brought in federal district

---

[1] The defendants refer to these as "recycled genuine original equipment manufacturer parts."

court.  *See King v. Marriott Int'l, Inc.*, 337 F.3d 421, 424 (4th Cir. 2003).  Typically, that occurs in one of two circumstances: where the requirements for diversity jurisdiction are met or where the face of the complaint raises a federal question.  *See Lontz v. Tharp*, 413 F.3d 435, 439 (4th Cir. 2005).  The defendants do not contend that this case implicates the court's diversity jurisdiction.  Thus, the only issue is whether the action falls within the ambit of federal question jurisdiction.

Under the well-pleaded complaint rule, which applies equally to original and removed jurisdiction, a federal question must appear from the face of the plaintiff's well-pleaded complaint.  *Lousiville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).  In short, a federal right must be an essential element of the plaintiff's claim; the mere existence of a federal defense will not suffice.  *See Lontz*, 413 F.3d at 439.  Thus, as a general matter, the plaintiff may avoid federal jurisdiction by exclusively relying on state law in the complaint.  *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

In this case, state law is the only alleged basis for the plaintiff's claims.  However, there is a "small class of 'cases in which a well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims.'"  *Pinney v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005).  This is known as the substantial federal question doctrine.  Three elements must be met before a court may exercise jurisdiction in this narrow category of cases: "[1] does a state-law claim necessarily raise a stated federal issue, [2] actually disputed and substantial, [3] which a federal forum may entertain without disturbing any congressionally

3

approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

There is also a "narrow exception" to the well-pleaded complaint rule—the doctrine of complete preemption. *Lontz*, 413 F.3d at 439. A careful distinction must be drawn between complete preemption and ordinary, or "conflict," preemption. *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2003). Because conflict preemption is a defense to a state-law claim, the Supreme Court has ruled that it does not appear on the face of a well-pleaded complaint and thus does not authorize removal of an action to federal court. *Id.* at 371.

Complete preemption, by contrast, "is not a distinct type of preemption at all, but rather is a jurisdictional rule positing that all claims in a given topic arise under federal law, thereby paving the way for removal of an action to federal court pursuant to 28 U.S.C. § 1441(b)." *Smith v. BAC Home Loans Servicing, LP*, 769 F. Supp. 2d 1033, 1039 n.7 (S.D. W. Va. 2011). Thus, "the doctrine of complete preemption has but one purpose—that is, the recharacterization of a plaintiff's state complaint so that it may be considered federal for the purposes of the well-pleaded complaint rule." *Discover Bank v. Vaden*, 489 F.3d 594, 611 (4th Cir. 2007) (Goodwin, J., dissenting), *maj. op. rev'd*, 556 U.S. 49 (2009). Complete preemption is rarely applied. Because the Supreme Court presumes that Congress did not intend to displace a whole panoply of state law, it has been reluctant to find complete preemption. *See Lontz*, 413 F.3d at 441.

The defendants assert that federal jurisdiction exists under the substantial federal question doctrine and doctrine of complete preemption. They specifically allege that, "it is impossible to give effect to the West Virginia Crash Parts Act without first determining which parts are

'sufficient to maintain the manufacturer's warranty' under the Magnuson-Moss Warranty Act."

(Defs.' Mem. Opp'n State's Mot. Remand & Costs [Docket 9], at 5.)

> The Crash Parts Act states:
>
> For all motor vehicles requiring repair by motor vehicle body shops in the year of their manufacture or in the two succeeding years thereafter, motor vehicle body shops must use genuine crash parts sufficient to maintain the manufacturer's warranty for fit, finish, structural integrity, corrosion resistance, dent resistance and crash performance unless the motor vehicle owner consents in writing at the time of the repair to the use of aftermarket crash parts. No insurance company may require the use of aftermarket crash parts when negotiating repairs of the motor vehicle with any repairer for a period of three years, the year the motor vehicle was manufactured and the two succeeding years thereafter, unless the motor vehicle owner consents in writing at the time of the repair to the use of aftermarket crash parts.

W. VA. CODE § 46A-6B-3. The Act defines "genuine crash parts" as parts "[m]anufactured by or for the original manufacturer of the motor vehicle to be repaired" that "are authorized to carry the name or trademark of the original manufacturer of the motor vehicle." W. VA. CODE § 46A-6B-2(d). An "aftermarket crash part" is defined as one that is "[m]anufactured by a person other than the original manufacturer of the motor vehicle to be repaired" and "[f]or which the original manufacturer of the motor vehicle has not authorized the use of its name or trademark by the manufacturer of the crash parts." W. VA. CODE § 46A-6B-2(a).

In 1997, a group of organizations, including the West Virginia Automotive Dismantlers and Recyclers Association, brought suit in the Circuit Court of Kanawha County, seeking a declaratory judgment that use of salvage crash parts without the written consent of the automobile owner does not violate the Crash Parts Act. As noted earlier, a salvage crash part is one manufactured by or for the original manufacturer that is authorized to carry the name or trademark of the original manufacturer, but has been removed from a salvage vehicle. (Defs.'

Mot. Dismiss [Docket 7], Ex. A, at 6.) Circuit Judge Charles King reasoned that salvage crash parts meet the statutory definition of "genuine crash parts." (*Id.* at 7.) However, Judge King explained that under the statute body shops can only use genuine crash parts that "are sufficient to maintain the manufacturer's warranty." (*Id.*) In that case, "[b]ased on the undisputed evidence in the record respecting automobile manufacturers' new car warranties, 'salvage crash parts' installed on an automobile void new car warranties with respect to those 'salvage crash parts,' and any original parts coming into contact with those 'salvage crash parts,' at least to the extent that the original parts are affected by the 'salvage crash parts.'" (*Id.*) Judge King therefore held that when insurance companies negotiate the repair of automobiles and motor vehicle body shops repair them, they must use "new 'genuine crash parts' sufficient to maintain the automobile manufacturer's new car warranty for that part, unless they first obtain the consent of the owner of the automobile to be repaired to use . . . 'salvage crash parts.'" (*Id.* at 10.)

The defendants argue that Judge King's reasoning is flawed because it does not consider the Magnuson-Moss Warranty Act ("MMWA"). The MMWA was passed in response to consumer complaints regarding the inadequacy of warranties on consumer goods. *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1272 (11th Cir. 2002). Its purpose is "to improve the adequacy of information available to consumers, prevent deception, and improve competition in marketing of consumer products." *Id.* (quoting 15 U.S.C. § 2302(a)). The MMWA prohibits a warrantor of a consumer product from "condition[ing] his written or implied warranty of such product on the consumer's using, in connection with such product, any article or service . . . which is identified by brand, trade, or corporate name." 15 U.S.C. § 2302. The defendants also point to a Consumer Alert issued by the Federal Trade Commission, which states that "The

Magnuson-Moss Warranty Act makes it illegal for companies to void your warranty or deny coverage under the warranty simply because you used an aftermarket or recycled part." (Defs.' Mem. Opp'n State's Mot. Remand & Costs [Docket 9], at 9.)

Turning to the merits of the defendants' positions, the preemption argument can easily be dispensed. The MMWA does not completely preempt West Virginia's Automotive Crash Parts Act. When a claim is completely preempted, the court finds that the plaintiff "brought a mislabeled federal claim." *Sonoco Prods.*, 338 F.3d at 371. The provision of the MMWA cited by the defendants prohibits warrantors of consumer products from conditioning their warranties in certain circumstances. In contrast, the Crash Parts Act maintains standards for motor vehicle body shops and insurance companies for the repair of new automobiles. The federal and state statutes govern different actors and different conduct. It is nonsensical to allege that a claim that an insurance company and a motor vehicle body shop have repaired automobiles in a way that violates the Crash Parts Act is actually a claim under the MMWA, which applies to warrantors of consumer products.

The substantial federal question doctrine is also inapplicable to the instant dispute. The defendants contend that for the court to hold, as they argue it should, that insurers' and body shops' use of salvage crash parts in new cars without the owner's consent does not violate the Crash Parts Act, it must refer to the MMWA provision prohibiting a warrantor from conditioning its warranty on the use of a part that is identified by brand, trade, or corporate name. This is incorrect. To determine whether genuine crash parts are "sufficient to maintain the manufacturer's warranty," the court does not need to look any further than the warranty itself. This is a matter of contract interpretation. How federal law affects what warranties can and

7

cannot do is separate matter entirely that is not raised in this case. Accordingly, whether the defendants are liable under the Crash Parts Act does not raise a federal issue and therefore the substantial federal question doctrine does not apply. Because this action could not have originally been brought in federal court, I **GRANT** the plaintiff's Motion to Remand. The plaintiff also requests that the court award costs. The plaintiff provides no justification for such an award, and I do not find one; accordingly, this request is **DENIED**.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

        ENTER:     March 27, 2012

        _____
        Joseph R. Goodwin, Chief Judge